**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| LISA E. CHAPMAN, ) | Civil Action No.: 2:19-cv-00064-BHH-MGB |
| ) | |
| Plaintiff, ) | **COMPLAINT** |
| ) | **Violation of Title VII** |
| vs. ) | **(Sexual Harassment and Retaliation)** |
| ) | |
| ) | |
| MEDICAL UNIVERSITY OF ) | |
| SOUTH CAROLINA, ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |
| _____) | |

The plaintiff above named, complaining of the acts of the above-named defendant, states as follows:

**PARTIES AND JURISDICTION**

1. That the plaintiff is a resident and citizen of the County of Pike, State of Kentucky but, at the time of the events alleged herein, she was a resident and citizen of the County of Charleston, State of South Carolina.

2. That, upon information and belief, the defendant Medical University of South Carolina ("MUSC" or "defendant") is a state agency maintaining offices and agents and otherwise conducting business in the County of Charleston, State of South Carolina.

3. That this court has federal question jurisdiction over this action pursuant to 42 U.S.C. §2000e-2, 42 U.S.C. §2000e-3, 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

4. That venue for all causes of action stated herein lies in the District of South Carolina, Charleston Division, in that, pursuant to 28 U.S.C. § 1391(b), the defendant resides and does business in this district and division, and a substantial part of the events giving rise to plaintiff's claims occurred here.

1

**CONDITIONS PRECEDENT**

5. That plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of the foregoing action, all of which are more fully described below. Moreover, at all relevant times as defined by Title VII, defendant employed and currently employs fifteen (15) or more employees and, as such, is an "employer" as defined by Title VII, and otherwise subject to that Act.

6. That as result of defendant's discriminatory conduct, all of which is more fully described below, on or about February 21, 2018 plaintiff timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination and harassment based upon sex and retaliation.

7. That on or about October 24, 2018 plaintiff received her "Dismissal and Notice of Rights" to sue from the EEOC regarding the complaint described above in Paragraph 6.

8. That plaintiff has timely filed the foregoing action within ninety (90) days of the date on which she received her "Dismissal and Notice of Rights" to sue described above in Paragraph 7.

**FACTS**

9. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 8 hereinabove as fully as if set forth verbatim.

10. That plaintiff is a female.

11. That plaintiff has been a Registered Nurse since 1992.

12. That in or around February of 2017, defendant hired plaintiff as a Registered Nurse to work in the Senior Care Unit of its Institute of Psychiatry.

13. That in this position, plaintiff reported to a Charge Nurse, Kimberly Jenkins ("Jenkins"). Jenkins, in turn, reported to the Unit Manager, Stanisha Vick ("Vick"). Typically, plaintiff worked the night shift along with Jenkins. Vick did not work the night shift.

14. That during plaintiff's employment at defendant plaintiff performed her job duties in an above-satisfactory fashion and maintained an excellent employment record there. To this end, in or around August of 2017, Vick rated plaintiff as "competent" in all categories contained in plaintiff's performance evaluation. And, plaintiff was never disciplined the entire time she worked at defendant.

15. That in or around May of 2017, a male Therapeutic Assistant, Patrick Olalere ("Olalere"), began to sexually harass plaintiff at work on a constant and repeated basis. Olalere worked in the same department on the same unit and on the same shift as plaintiff. Oftentimes plaintiff and Olalere worked together in the same room with the same patient.

16. That while the instances of harassment are far too numerous to itemize, they include, but are not limited to the following:

- On or about May 10, 2017, plaintiff was walking from her floor to the MUSC cafeteria across the street when Olalere approached plaintiff and began to flirt with her. At that time plaintiff had never seen or spoken to Olalere before. In flirting with plaintiff, Olalere offered to buy plaintiff a sandwich. When plaintiff declined the offer, Olalere persisted in offering to pay for plaintiff's lunch. Again plaintiff refused the offer. On the way back from lunch, Olalere told plaintiff that he thought plaintiff was okay looking and that he wanted plaintiff to be his girl. He then asked plaintiff if she was okay with that. Believing that Olalere was joking, plaintiff laughed. Olalere then insisted plaintiff take a shortcut with him around the back of the building. At this point plaintiff became fearful and apprehensive. Before plaintiff and Olalere arrived at the work location, Olalere grabbed and held plaintiff's hand and tried to kiss plaintiff. Plaintiff pulled away. When plaintiff and Olalere arrived back at the hospital, Olalere asked plaintiff if she was with someone, to which plaintiff responded "Yes." Not to be deterred, Olalere said "That is fine. We can mess around and just have some fun."

Plaintiff responded that she was happy in her relationship and not interested in any relationship with Olalere;

- Thereafter, Olalere continued to pressure plaintiff to have sex with him at work. When plaintiff would tell Olalere that she wasn't interested in him, he would just laugh;

- On one occasion when Olalere and plaintiff were in a patient's room alone together, Olalere grabbed plaintiff's rear end. Surprised and offended, plaintiff slapped Olalere and told him not to do that. Again Olalere just laughed;

- Olalere would constantly ask plaintiff to meet him alone in the gym or to meet him alone in West Ashley (where plaintiff lived). When plaintiff refused, Olalere would become angry;

- On or about May 20, 2017, Olalere trapped plaintiff in a room at the hospital and would not let her out. In the process, he pinned plaintiff up against the wall and kissed plaintiff while fondling her breasts. Plaintiff pushed Olalere off of her and told him to stop. Plaintiff was very intimidated by Olalere's size and forcefulness;

- Olalere repeatedly approached plaintiff trying to get plaintiff to go out with him, date him, kiss him, and have sex. Each time, plaintiff would tell him she was not interested, but plaintiff's repeated rejections did not deter Olalere;

- Olalere understood that plaintiff was not comfortable with his unwanted advances. In fact, he had repeatedly apologized to plaintiff for his behavior. Then, on or about June 15, 2017, Olalere asked plaintiff to meet him in the gym at the hospital so that he could make things right and apologize to plaintiff. After securing repeated promises from Olalere that he would not touch her, plaintiff agreed to meet him in the gym and talk. Once plaintiff walked in the gym, Olalere turned the lights off, pulled plaintiff towards him and started kissing plaintiff. Plaintiff attempted to pull away and reminded him he had promised he would not touch her. Olalere just laughed. Then he put his hand down plaintiff's shirt, touched her breast, and tried to put his hand down plaintiff's pants. Plaintiff pleaded with Olalere to stop and to let her go, but he would not. Ultimately, Olalere pulled his pants down, forced plaintiff's hand onto his penis, placed his hand over plaintiff's hand, and began to stroke his penis. Plaintiff tried to pull away, but Olalere was too strong. In the end, Olalere pushed plaintiff to her knees, grabbed ahold of plaintiff's head, forced his penis into plaintiff's mouth, and then ejaculated into plaintiff's mouth. Of

4

course, plaintiff was terrified. She was grasping for air and could not breathe;

After the incident, Olalere told plaintiff that she better not tell anyone what had just happened and that if plaintiff did, he would "slap the shit" out of plaintiff. In the ensuing days, Olalere would make comments to plaintiff about the incident, asking plaintiff what she thought about it and stating that the next time "it won't be so quick" and that he would bring condoms. In addition, Olalere would refer to the rape as "our bond" when he spoke to plaintiff;

- ❖ For the next month, Olalere continued to harass plaintiff by cornering plaintiff in rooms, grabbing plaintiff's rear end, her breasts, and her vaginal area (over plaintiff's clothes) and by repeatedly attempting to kiss plaintiff. He would pull plaintiff down on him or up against him. Many times he would grab plaintiff's hand and rub his penis with it;

- ❖ On many occasions Olalere would tell plaintiff not to tell anyone about his conduct, or what he referred to as "our secret." One day Olalere threatened plaintiff that, if she did not kiss him, that he would knock the shit out of plaintiff;

- ❖ On or about June 29, 2017, Olalere and plaintiff were changing and cleaning a patient. In the process, Olalere told another TA in the room that plaintiff was his girlfriend;

- ❖ One evening, Olalere asked plaintiff if he could borrow a phone charger from her. Plaintiff had an old, spare charger, so she let Olalere borrow it. However, plaintiff forgot to get it back from Olalere when she left work. After leaving work, plaintiff was in her car at the President Street parking garage when all of a sudden Olalere opened the door to plaintiff's car and jumped in the passenger seat. Olalere gave the phone charger back to plaintiff, then he tried to kiss plaintiff. Plaintiff refused the advance and Olalere became angry and left;

- ❖ One morning after leaving work, plaintiff was at a red light. Olalere pulled up beside plaintiff and tried to get her to follow him. Plaintiff refused;

- ❖ On many occasions Olalere would taunt plaintiff, telling plaintiff that they were eventually going to have sex, so they may as well go ahead and do it;

- ❖ On or about July 27, 2017, Olalere insisted that plaintiff meet him for breakfast after work. Plaintiff said no and made it a point to leave

5

work earlier than Olalere in order to avoid him. Nevertheless, Olalere called plaintiff to see where she was, and pestered plaintiff to meet him somewhere close to work. Plaintiff responded that she had already left work and was almost home. Olalere persisted in asking plaintiff where she was. Finally, plaintiff relented and told him she was getting gas. Upon further aggressive inquiry, plaintiff hesitantly advised Olalere where she was getting gas - believing the disclosure was harmless and would end the harassing call. Within a few minutes, Olalere pulled up beside plaintiff, telling plaintiff to follow him across the road to a park. Plaintiff refused and, instead, told him that if he had something to say, he could say it there at the gas station. Olalere exclaimed, "This is bullshit" and left. When plaintiff returned to work on or about August 3, 2017, Olalere told plaintiff that when he told her to do something, she "best do it," referring to his request that plaintiff follow him to the park when they were at the gas station. Plaintiff truly was afraid that Olalere would physically harm her if he got angry enough;

- ❖ On or about August 18, 2017, Olalere sent a text message to plaintiff while plaintiff was with her boyfriend and parents. Plaintiff's boyfriend saw the text and understandably responded to the text on plaintiff's phone advising that he was plaintiff's boyfriend and directing Olalere to stop texting plaintiff. When plaintiff returned to work on or about August 23, 2017, Olalere was extremely upset at plaintiff for allowing her boyfriend to see her phone. And, he directed plaintiff to assign a woman's name to his name in her contact list;

- ❖ On a couple occasions Olalere convinced plaintiff to meet him off the work premises (in a Starbucks parking lot and outside the office of one of plaintiff's physicians). On these occasions Olalere made sexual advances toward plaintiff by trying to kiss plaintiff and touch her inappropriately;

- ❖ On or about September 13, 2017, Olalere pinned plaintiff up against the wall in a patient's room and tried to kiss her. Plaintiff forcefully told him to stop and he backed off;

- ❖ All of the above harassment would occur on a repeated basis, anywhere from 1-3 times a week to several times a day.

17. That on or about September 27, 2017, Jenkins began to ask plaintiff about plaintiff's job while they were at the nurses' station. During the conversation, Jenkins asked plaintiff if plaintiff was being treated with dignity and respect in the workplace (or words to

6

that effect). Plaintiff responded by telling Jenkins that plaintiff believed she was being sexually harassed. Before plaintiff could speak another word, Jenkins slammed her hand on the desk and exclaimed "You don't have to tell me who - it's Patrick," or words to that effect.

18. That Jenkins then took plaintiff into the nutrition room and asked plaintiff to tell her what Olalere was doing to her. When plaintiff summarized the harassment to Jenkins, Jenkins stated that Olalere had done the same thing to her. Specifically, Jenkins relayed that on one occasion when she was in the nutrition room heating up her lunch, Olalere blocked the door and asked her for her phone number. When Jenkins refused to give him her number, Olalere persisted in flirting with her, making Jenkins feel uncomfortable.

19. That Jenkins then relayed plaintiff's report to Vick. On or about the early morning hours of September 28, 2017, Vick called plaintiff and told plaintiff that she had to report the matter to Human Resources. The next morning plaintiff met with Human Resources and advised them of the harassment.

20. That the above egregious sexual harassment (and assault) devastated plaintiff to the point she could not work. On or about October 19, 2017, defendant granted plaintiff a leave of absence (without pay).

21. That on or about December 28, 2017, defendant terminated plaintiff because it falsely alleged plaintiff did not respond to communications with defendant and did not provide medical documentation to support her leave.

22. That in the interim, apparently Olalere resigned from defendant. And, plaintiff has pressed criminal charges.

23. That there is evidence that Olalere's conduct was widespread at defendant and undertaken in the open there. There also may be evidence that Olalere harassed as many as

nine (9) other female employees at defendant. Some of these victims even told plaintiff that Olalere harassed them as well.

24. That there is evidence that the Head of Security at defendant may have been aware of Olalere's conduct.

25. That there is evidence that Olalere was disciplined and/or terminated from prior jobs for alleged sexual harassment issues. Given the above, defendant knew or should have known about Olalere's conduct and wholly failed to stop it.

### FOR A FIRST CAUSE OF ACTION:
### VIOLATION OF TITLE VII
### SEXUAL HARASSMENT/HOSTILE ENVIRONMENT

26. That the plaintiff hereby realleges each and every allegation contained in Paragraphs 1 through 25 hereinabove as fully as if set forth verbatim.

27. That at all pertinent times defendant employed fifteen (15) or more employees and, as such is an "employer" as defined by Title VII, and otherwise subject to the said Act.

28. That defendant's conduct (by and through Olalere) as described above was offensive to plaintiff and unwelcome, and plaintiff so advised defendant.

29. That said harassment described above was based on plaintiff's sex.

30. That defendant's behavior humiliated plaintiff, unreasonably interfered with her work performance, affected the terms, conditions and privileges of her employment at defendant and otherwise caused plaintiff severe psychological and physical harm. Moreover, the harassment was pervasive and severe and happened on repeated occasions.

31. That defendant's actions as alleged above, created a work environment that plaintiff found, and a reasonable person would find, hostile and abusive.

32. That plaintiff complained about the above-described sexual harassment directly to defendant and defendant was otherwise on notice that the harassment was occurring as it occurred openly and on a widespread basis at the defendant, and Olalere harassed other women at defendant, including supervisory employees.

33. That despite the above, defendant wholly failed to take prompt and effective remedial action to end the harassment, and defendant continued to sexually harass and discriminate against the plaintiff, even after plaintiff complained about the harassment and/or after defendant became aware of the harassment or should have been aware of it.

34. That the actions of defendant in subjecting plaintiff to unwanted sexual touchings, assault, battery, propositions and innuendo, all as described above, constitutes discrimination against plaintiff based on gender in violation of Title VII and the Civil Rights Act of 1991.

35. That as a result of the above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

36. That the defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the plaintiff, and therefore plaintiff is entitled to recover punitive damages from the defendant.

## FOR A SECOND CAUSE OF ACTION:
## VIOLATION OF TITLE VII
## RETALIATION

37. That the plaintiff hereby realleges each and every allegation contained in Paragraphs 1 through 36 hereinabove as fully as if set forth verbatim.

38. That at all pertinent times defendant employed fifteen (15) or more employees and, as such, is an "employer" as defined by Title VII, and otherwise subject to the said Act.

39. That as alleged above, plaintiff complained to the defendant on several occasions that she was being sexually harassed and discriminated against on the basis of her gender.

40. That plaintiff's complaints were made in good faith, and constitute protected activity under Title VII.

41. That shortly after plaintiff complained about sexual harassment, defendant fired plaintiff without warning, notice or cause and for false and/or trivial reasons.

42. That defendant terminated plaintiff for making complaints of sexual harassment and discrimination and for otherwise opposing discrimination based upon sex, all of which is in violation of 42 U.S.C. § 2000e-3.

43. That as a result of the above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

44. That the defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the plaintiff and, therefore, plaintiff is entitled to recover punitive damages from the defendant.

WHEREFORE, as to all causes of action, plaintiff prays for the following relief against defendant: for such amount of actual and special damages as the trier of fact may find, (including lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, and physical and personal injuries), punitive damages, the cost and disbursements of this action, including reasonable attorney's fees, prejudgment interest and for such other and further relief as the court deems just and proper.

                HITCHCOCK & POTTS

                By: *s/A. Christopher Potts*
                Federal ID No.: 5517
                31 Broad Street (P.O. Box 1113)
                Charleston, SC 29401 (29402)
                Telephone: (843) 577-5000
                Fax: (843) 722-8512
                E-Mail: hitchp@bellsouth.net
                ***Attorneys for the Plaintiff***

Charleston, South Carolina
January 8, 2019